**McDONNELL DOUGLAS CORPORATION,**
**Appellant,**

v.

**The UNITED STATES, Appellee.**

**Appeal No. 83–1001.**

United States Court of Appeals, Federal Circuit.

Feb. 12, 1985.

Francis M. Gaffney, Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., argued for appellant. With him on the brief were Gary T. Carr, St. Louis, Mo., and Glenn E. Monroe, Washington, D.C.

Stephen G. Anderson, Dept. of Justice, Washington, D.C., argued for appellee. With him on the brief were J. Paul McGrath, Asst. Atty. Gen., and David M. Cohen, Director, Washington, D.C.

Helene M. Goldberg, Dept. of Justice, Washington, D.C., of counsel.

Before RICH, DAVIS, BENNETT, MILLER and SMITH, Circuit Judges.

BENNETT, Circuit Judge.

McDonnell Douglas Corporation (MDC) appeals a decision of the Armed Services Board of Contract Appeals, ASBCA No. 26747, 83–1 BCA ¶ 16,377. The ASBCA dismissed the appeal as premature, without prejudice, because there was no showing that a claim had been made to the contracting officer and then appealed as required by the disputes clause of the contract or the Contract Disputes Act of 1978 (CDA), 41 U.S.C. §§ 605, 606 (1982). We affirm the dismissal but reverse-in-part for reasons to be explained.

## BACKGROUND

This is a government contract dispute over the scope of rights granted by a clause in a contract between MDC and the United States. The essential facts leading to the dispute are uncomplicated. The legal issue, however, is one of first impression in this court. The issue here is the jurisdiction of the ASBCA to consider the merits of a subpoena duces tecum issued by the Comptroller General of the United

States who seeks its enforcement in a United States district court.

The United States made a contract with the Republic of Korea (ROK) to supply it with certain fighter aircraft. The contract was wholly funded by the ROK. Thereafter, on January 23, 1976, acting for the ROK, the government (through the United States Air Force) entered into a negotiated fixed-price contract with MDC for the manufacture of 19 planes for sale by the government to the Republic of Korea. Delivery of the purchase was completed by MDC in January 1978.

The contract with MDC contained a clause, incorporated by reference to ASPR § 7–104.15 and described as "Examination of Records by Comptroller General." This so-called "access clause" provides in pertinent part as follows:

> (b) The Contractor agrees that the Comptroller General of the United States or any of his duly authorized representatives shall, until the expiration of three years after final payment under this contract ... have access to and the right to examine any directly pertinent books, documents, papers, and records of the Contractor involving transactions related to this contract.

Such a clause is required in a negotiated contract by 10 U.S.C. § 2313(b) (1982).

After the contract was substantially completed, auditors in the General Accounting Office (GAO) discovered that MDC's cost projections, on which the $80 million contract price and profit were based, greatly exceeded the actual costs incurred and thus inflated, beyond that agreed to, MDC's percentage of profit. At GAO's request MDC supplied some documents pursuant to the access clause but refused to produce in-house estimates of tooling and design engineering costs which the GAO thought would be "directly pertinent" in determining whether MDC was aware it had misrepresented its projected costs to the Air Force. On January 4, 1982, the Comptroller General, who heads the GAO, served MDC with a timely administrative subpoena duces tecum, citing the access clause and several statutes and regulations as his authority. Upon noncompliance with the subpoena, the Comptroller General commenced a civil enforcement action on January 25, 1982, in the United States District Court for the Eastern District of Missouri. On July 25, 1983, that court upheld the subpoena. Execution of the judgment was stayed pending an appeal by MDC to the United States Court of Appeals for the Eighth Circuit.

In January 1982, soon after the subpoena in issue was served, MDC sought to contest it before the ASBCA. It argued to that board that the Comptroller General's claim of right was a contract dispute under the terms of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1982), and that the board had exclusive jurisdiction of such disputes. In a lengthy opinion dated February 28, 1983, certified March 2, 1983, the ASBCA agreed with MDC that it had properly elected to have the dispute processed under the CDA but dismissed the appeal without prejudice, holding that it was premature because, under the Act and the contract disputes clause, the board had no jurisdiction since there was no contracting officer's decision to review. Neither party had made a claim to the contracting officer. Further reference to the ASBCA opinion will be made hereafter. It is the subject of the present appeal to this court. We stayed our decision pending an opinion by the United States Court of Appeals for the Eighth Circuit. That judgment was announced on December 19, 1984. *United States v. McDonnell Douglas Corporation*, 751 F.2d 220 (8th Cir.1984).

## OPINION

In its opinion affirming the judgment of the district court, the Eighth Circuit rejected MDC's challenge to the district court's jurisdiction. That challenge was based on two main arguments: first, that the Contract Disputes Act gives the ASBCA exclusive jurisdiction; and, second, that the part of the General Accounting Office Act of 1980, 31 U.S.C. § 54(c) (Supp. IV 1980) (re-

codified at 31 U.S.C. § 716(c) (1982)),[1] which grants subpoena power to the Comptroller General with further authority to seek enforcement in the district court, is unconstitutional in that it violates the doctrine of separation of powers.

Under its first defense to the subpoena, MDC argued that interpretation of what were "directly pertinent" records, as described in the access clause, was exclusively a matter for the ASBCA because it raised a dispute subject to resolution under the Contract Disputes Act of 1978. The court held that it need not decide the applicability of that Act because it would not alter the jurisdiction to enforce subpoenas granted to the district court by a later statute, the General Accounting Office Act of 1980. Further, it was held that the jurisdiction granted necessarily carried with it the authority to determine if enforcement is proper, which necessitated interpreting the scope of the access clause of the contract.

■ The constitutional challenge fared no better in the Eighth Circuit's judgment because that court properly noted that the Comptroller General and the GAO are agents of the legislative rather than of the executive branch of the Federal Government. The power of the Executive, under the Constitution, to execute the laws is not involved here. The 1980 Act does not erode the Executive's authority. Congress has implied as well as express powers incident to its duty to legislate wisely. These include the power to investigate. *Watkins v. United States*, 354 U.S. 178, 187, 77 S.Ct. 1173, 1179, 1 L.Ed.2d 1273 (1957); *Quinn v. United States*, 349 U.S. 155, 160–61, 75 S.Ct. 668, 672, 99 L.Ed. 964 (1955). The Comptroller General, as the agent of Congress, is responsible for investigating all matters relating to the receipt and expenditure of public money, for evaluating programs and activities of the government, and for making recommendations looking to legislative action to assure economy and efficiency. *See* 31 U.S.C. §§ 712, 717 (1982). To ensure fulfillment of his duties, he has been given the tool of subpoena and is directed by statute to the district court for its enforcement. 31 U.S.C. § 54(c)(1)–(2) (Supp. IV 1980).

■ A subpoena for records in a civil case must, of course, meet certain standards. The court must make sure that in an enforcement proceeding the subpoena has been served pursuant to lawful authority, is for a lawful purpose, is relevant to the lawful purpose, and is not unreasonable. *Oklahoma Press Publishing Co. v. Walling*, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946). These tests were held to have been fully met in the case decided by the Eighth Circuit Court of Appeals.

■ We do not find it necessary to address other conclusions reached by the Eighth Circuit, as they do not relate directly to the issue before us now, i.e., the appeal from the ASBCA. We do agree with the other court's judgment, however, that the subpoena was constitutionally authorized and enforceable by the district court. Refusal of MDC to comply with the access clause in the contract, agreed to by the parties, provided a lawful reason to invoke the subpoena power and its subsequent enforcement was proper under section 54(c)(2). On these issues the judgment of the Court of Appeals for the Eighth Circuit is res judicata.

■ The foregoing does not render moot the present appeal. The Eighth Circuit did not have before it an appeal from the ASBCA nor did it consider applicability of the Contract Disputes Act. The ASBCA has held that because the contracting officer had neither made a decision nor refused to make one, MDC's appeal under the disputes clause of the contract was simply premature. The appeal was dismissed "without prejudice to appellant's filing a new appeal when the contracting officer has issued a proper decision." The bar to

---

1. To minimize confusion, we will refer to the old section 54(c), which was in effect when the contract was made, and which appears in the orders of the district court and the Eighth Circuit opinion.

the subject matter jurisdiction was seen as temporary. The penultimate paragraph of the ASBCA's opinion states:

> If a dispute exists between appellant and the Government regarding the meaning and scope of the "Records" clause, as alleged in appellant's complaint, this could properly be [the] subject of the disputes procedure set forth in the "Disputes" clause. However, there is no allegation or showing that the contracting officer has considered or determined this matter as required by the clause. In the absence of a contracting officer's appealable decision or a failure or refusal to issue such a decision the disputed matter is not ripe for the Board's consideration under the "Disputes" clause.

83–1 BCA at 81,426. This view would require the Comptroller General to submit his "claim" of access to MDC records to the contracting officer for approval before seeking enforcement in the district court. If this is the view of the board, it cannot be allowed to stand. It is certainly inimical to the independence of the Comptroller General whose statutory charter to investigate includes activities of both contractors and government agencies. Nevertheless, MDC urges upon us this costly, slow, and tortuous proceeding, although it is really meaningless because the district court would not be bound by the board's findings and the board could do nothing about it one way or the other.

We have said that if the foregoing is the view of the board, it cannot stand. We raise a question because note 16 to the board's opinion suggests an inconsistent view based on legislative history. The footnote says in part:

> We are therefore unable to agree with appellant that the CDA requires the

Comptroller General to submit the question of access to appellant's records to the contracting officer for final decision.

MDC's position in this appeal to the court adheres, however, to the board's position as stated in the text of its opinion, i.e., that had the contracting officer made a decision, the ASBCA could have considered it under the disputes clause. From this point of reference, MDC argues that if a contracting officer's decision is necessary, but none has been made because no claim was submitted to him, the ASBCA could order him to make a decision and if he did not comply the board could decide the claim itself. MDC says that with its "inherent powers" the board could infer a de facto decision which supported the government's known position. The concept here appears to be that failure of the contracting officer to have made a decision sua sponte, or on submission of a claim, was a mere formality which the ASBCA could and should overlook to prevent elevation of form over substance.

In support of its position, MDC cites provisions of the Contract Disputes Act, 41 U.S.C. § 605(c)(4)–(5). The ASBCA rejected this argument by pointing out that the sections relied on relate only to claims by contractors. The very first words in section 605(c)(4) makes this evident.[2] No board or court has held that these sections apply to a government claim, such as made here, and there is no support for doing so in the legislative history of the CDA. The ASBCA also held that a government claim and a contracting officer's decision on it could not be implied, as MDC suggested. We think that the board was correct in rejecting MDC's thesis.

---

**2.** 41 U.S.C. § 605(c)(4)–(5) states:

> (4) *A contractor may request* the agency board of contract appeals to direct a contracting officer to issue a decision in a specified period of time, as determined by the board, in the event of undue delay on the part of the contracting officer. [Emphasis added.]
>
> (5) Any failure by the contracting officer to issue a decision on a contract claim within the period required will be deemed to be a

decision by the contracting officer denying the claim and will authorize the commencement of the appeal or suit on the claim as otherwise provided in this chapter. However, in the event an appeal or suit is so commenced in the absence of a prior decision by the contracting officer, the tribunal concerned may, at its option, stay the proceedings to obtain a decision on the claim by the contracting officer.

The ASBCA also held that even if the contracting officer considered a claim properly made and within the jurisdiction of the board, nevertheless, it would not be considered out of comity with the district court which had the same substantive issues under consideration concerning the interpretation and scope of the access or records clause of the contract. This holding is also contested in the present appeal but we see no need to rule on a hypothetical. The board did not decline to rule on the merits because of its rule on comity. By the same token, we intend to suggest nothing to imply what our jurisdictional ruling would be if the parties to a contract, where discovery is disputed, agreed to invoke the disputes clause for an administrative resolution of the issue and waived the enforcement mechanism. That is another issue not now before the court.

MDC's final argument is that the clear intent of Congress expressed in the Contract Disputes Act was to divest the district courts and the regional circuits of all jurisdiction over government contract disputes and to concentrate that authority in the contracting officer, the board or the Claims Court at the contractor's option, and eventually in the Court of Appeals for the Federal Circuit. Not until these bodies had approved a claim under the access clause could a subpoena be submitted for enforcement in the district court. In support of this position, MDC points out that section 602(a) of the CDA pertains to "any express or implied contract," that section 605(a) pertains to "[a]ll claims ... relating to a contract," that the board under section 607(d) has jurisdiction "to decide any appeal ... relative to a contract," that the Claims Court is vested with jurisdiction, 28 U.S.C. § 1491(a)(2), "to render judgment upon any claim by or against, or dispute with, a contractor arising under section 10(a)(1) of the Contract Disputes Act of 1978," and that jurisdiction of the district courts to adjudicate contractor claims against the government under 28 U.S.C. § 1346 was explicitly withdrawn by section 14(a) of the Act. It is conceded that Congress did contemplate exceptions (not relevant here) to the applicability of the CDA. But, MDC says it made no exception to allow the government to assert a contract claim directly to the district court. Because Congress explicitly exempted specified persons or claims from coverage by the Act, it is urged by MDC that failure to exempt other persons or claims is persuasive of congressional intent that all other persons or claims be within the Act's coverage.

The foregoing arguments are forcefully made to support applicability of the CDA to this case, contrary to the Eighth Circuit view. With these arguments as a foundation, MDC says that any interpretation of the law, other than that which it makes, would permit the Comptroller General to avoid the subject matter jurisdiction conferred on the ASBCA by statute. He could do this simply by not making a government claim against the contractor before the contracting officer but instead asserting it in another forum, as was done here. This, we are told, negates the statutory language and congressional intent and is the "central issue of this appeal." We are challenged to note that if we disagree we will be carving out of the statute a significant exception to the 1978 legislative plan and will deprive contractors of important rights.

We Affirm that, generally, the purpose of the Contract Disputes Act is as MDC has stated it, but only as it has been interpreted without reference to section 54(c), now 31 U.S.C. § 716(c) (1982). Most of the authorities relied on by MDC are therefore not useful. MDC has further overlooked or chooses to ignore salient considerations which nullify its arguments in this case. It has forfeited any support for its insistence that the ASBCA has committed error in not accepting jurisdiction. This is true because MDC did not itself follow the Act it now relies on, by bringing to the board an appeal from a contracting officer's decision, the very "linchpin" and necessary prerequisite for the board's jurisdiction. *Paragon Energy Corp. v. United States*, 227 Ct.Cl. 176, 645 F.2d 966 (1981).

Assuming it otherwise had jurisdiction, the board was helpless to deal with the access clause issue under this circumstance. The board also held, and properly so, that it has no authority to act sua sponte on a government claim. Further, we know of no authority which would have permitted the district court to have sought help from the board had it wished to know its views about the nature of the contractor's records.

■ It will not be our doing that will create any exception to the evident purpose of Congress when it enacted the Contract Disputes Act of 1978 and thereby intended to centralize the adjudication of government contract disputes. Congress itself created the exception complained of in the present case when it enacted the General Accounting Office Act of 1980 which put enforcement of the Comptroller General's subpoenas in the district court. It could have vested this authority in the Court of Claims. Congress had yet another opportunity to maintain consistency in the treatment of government contract cases when it wrote the Federal Courts Improvement Act, Pub.L. No. 97–164, 96 Stat. 25 (1982). At that time it could have put the enforcement authority in the United States Claims Court. We have to presume that it made considered judgments in 1980 and 1982 not to take any action to narrow district court jurisdiction in the subject matter, but rather to widen it. Therefore, when a subpoena duces tecum is challenged, the district court may, under the access clause and section 54(c), reach conclusions necessary for a judgment under the subpoena enforcement power explicitly granted. It was within the legislative discretion to make this exception to the general objectives of the Contract Disputes Act. Whether it was wise to do so is not for us to say. We do not legislate. If, as MDC argues, contractors have lost important rights thereby, they are at liberty to speak to Congress. That body periodically exercises oversight responsibilities for the public law.

## CONCLUSION

■ We have noted that the recent decision by the United States Court of Appeals for the Eighth Circuit held that it was unnecessary for it to decide the applicability of the Contract Disputes Act of 1978 when that Act does not and could not alter the authority to enforce subpoenas subsequently granted to the district court by the General Accounting Office Act of 1980. That court was not considering an appeal, as we are, from a decision of the ASBCA under the Contract Disputes Act. But, we think that it would be unreasonable to presume that Congress would assign subject matter jurisdiction for documents claimed by the Comptroller General to the ASBCA which is unable to enforce, or to prevent enforcement of, such claims. On the contrary, Congress has made it clear that the district court should have the enforcement authority and, implicitly, the power to decide whether to use it by interpreting the contract's access to the records clause for the limited purpose of enforcement. The ASBCA was, therefore, in error when it ruled that it would have subject matter jurisdiction under the disputes clause if an appeal came to it from the contracting officer where the interpretation and scope of the clause were in issue on enforcement of a Comptroller General's subpoena. Notwithstanding, we have considered the board's views and MDC's cogent arguments favoring board jurisdiction, but find them wanting in the posture of this case. It is our judgment that the ASBCA was correct in dismissing MDC's appeal but it should have done so with prejudice and not solely for the reason it gave.

AFFIRMED–IN–PART.

REVERSED–IN–PART.