**EASTERN, INC., et al., Plaintiffs,**

v.

**SHELLY'S OF DELAWARE, INC., et al., Defendants.**

**Civ. No. 88–5292 (JFG).**

United States District Court, D. New Jersey.

Sept. 8, 1989.

Steven G. Wolschina, Brown & Connery, Westmont, N.J., for plaintiffs.

Paul A. Blaine, Asst. U.S. Atty., Camden, N.J., for defendants.

## OPINION

GERRY, Chief Judge.

This case is before the court on defendant United States Postal Service's motion to dismiss plaintiff Eastern, Inc.'s action against it for lack of subject matter jurisdiction. For the reasons stated below, defendant's motion will be granted.

### Factual Background

"[I]t is well established that in passing on a motion to dismiss ... on the ground of lack of jurisdiction over the subject ..., the allegations of the complaint should be construed favorably to the pleader." *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Accordingly, we will accept plaintiff's allegations as true for purposes of this motion.

Defendant United States Postal Service ("USPS") is an independent establishment of the executive branch of the government of the United States. On April 18, 1987, USPS and Defendant Shelly's of Delaware ("Shelly's"), a Delaware corporation engaged in the business of general construction contracting, entered into a contract for the construction of a new post office facility at Pennsville, New Jersey. On May 18, 1987, pursuant to the Miller Act, 40 U.S.C. §§ 270a–270d, Shelly's as principal and defendants James Kavalary and James McClain as sureties, executed a standard form payment bond obligating themselves to USPS. By this bond, the sureties bound themselves jointly and severally in the amount of $493,750.00 on the condition that if Shelly failed to pay any person supplying labor and material for the project, suit could be filed on the bond, prosecuted to final judgment and executed thereupon.

On August 27, 1987, Shelly's entered into a subcontract with plaintiff Eastern, Inc. ("Eastern"), a Delaware subcontractor, to perform roofing work on the postal facility. Subsequently, Shelly's abandoned the project. The sureties, represented by defendant Devaughn Kittrel ("Kittrel") and, after them, defendant Jennings International Corp. ("Jennings") accepted USPS's offer to complete the work. Plaintiff continued working on the project after it received assurances from these defendants that it would be properly remunerated for its work. After completing a significant amount of work, however, plaintiff was terminated from the project by Jennings. Plaintiff was never paid in full for the work it had performed on the postal facility.

Eastern filed a complaint with this Court in which it named, among others, Shelly's, Kittrel, and Jennings as defendants. Eastern alleged that they were liable to it for violation of the Miller Act, breach of contract, fraud and conversion. In addition, Eastern named the USPS as a defendant, alleging that as an unpaid subcontractor on the postal facility, it holds an equitable interest in the contract balance owed by the USPS to Shelly's and/or its sureties. USPS has moved under 12(b)(1) of the Federal Rules of Civil Procedure to dismiss this motion on the grounds that this court lacks subject matter jurisdiction over Eastern's claim against it.

### Legal Analysis

The precise issue raised by this motion is whether a federal district court may exercise jurisdiction over a subcontractor's suit against the USPS. The thrust of defendant's argument is that the principle of sovereign immunity precludes Eastern from maintaining an action against USPS in district court. We begin our analysis, therefore, by examining the application of sovereign immunity to this case.

It is fundamental that "[t]he United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 2701, 69 L.Ed.2d 548 (1981); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–954, 47 L.Ed.2d 114 (1976). Congress created the USPS pursuant to the Postal Reorganization Act of 1970 (PRA), 39 U.S.C. § 101 *et seq.,* Congress provided a broad waiver of sovereign immunity for the USPS by enacting a "sue and be sued" clause in the PRA, which exposes the USPS to suit. 39 U.S.C. § 401(1). It is presumed that "when Congress launches a governmental agency into the commercial world and endows it with authority to 'sue and be sued' that agency is not less amenable to judicial process than a private enterprise under like circumstances." *Franchise Tax Board v. USPS,* 467 U.S. 512, 517–518, 104 S.Ct. 2549, 2552–2553, 81 L.Ed.2d 446 (1984) *citing FHS v. Burr,* 309 U.S. 242, 245, 60 S.Ct. 488, 490, 84 L.Ed. 724 (1940).

This presumption, however, can be overcome where the waiver of sovereign immunity would conflict with a "statutory scheme" or where "plain congressional intent" points toward a restrictive reading of the waiver. *Active Fire Sprinkler Corp. v. United States Postal Service,* 811 F.2d 747, 752 (2d Cir.1987). Defendant argues that the Contract Disputes Act of 1978 (CDA), 41 U.S.C. § 601 *et seq.,* is evidence of a "statutory scheme" or "plain congressional intent" which counsels a restrictive reading of the waiver provision of the PRA. This exception to the broad waiver of sovereign immunity, claims defendant, preempts this court's jurisdiction over the present action.

It is clear that the CDA does restore a measure of the USPS's immunity. Congress enacted the CDA to provide a "comprehensive system for adjudicating contract claims against the government." *Pre–Fab Products, Inc. v. United States Postal Service,* 600 F.Supp. 89 (D.Fla. 1984). Under the CDA, in all actions brought by or against executive agencies of the United States which involve an express or implied contract entered into by that agency, jurisdiction is vested in either the Postal Service Board of Contract Appeals or the United States Claims Court.

*Id.* By this act, Congress thus divested district courts of all jurisdiction over federal government contract disputes. *McDonnell Douglas Corp. v. United States,* 754 F.2d 365 (Fed.Cir.1985). The USPS is expressly included as an "executive agency" for the purposes of the Act. 41 U.S.C. § 601(2). Thus, had the grounds for this action been a contract which *Eastern* had entered into with the USPS, this court clearly would have no jurisdiction over this case.

Eastern, however, did not enter into a contract with the USPS. Eastern's only connection to the USPS is that it subcontracted with the general contractor who, in turn, contracted with the USPS. The question thus before us is whether the CDA's preemption of district court jurisdiction extends to actions brought by subcontractors. Eastern forcefully argues that this question should be answered in the negative. According to the plaintiff, the scope of the CDA is limited to actions brought by a party that has entered into a contract with an executive agency. The CDA by its terms, plaintiff points out, applies only to "express or implied contract[s] ... entered into by an executive agency." 41 U.S.C. § 602(a). Eastern's action against the USPS, plaintiff claims, does not involve a contract entered into by the USPS and thus does not fall under the provisions of the CDA. Consequently, plaintiff retains the opportunity to bring an action against the USPS in district court.

The plaintiff's arguments have some appeal. It is plain that the provisions of the CDA do not apply to subcontractors. *See* S.Rep. No. 1118, 95th Cong., 2d Sess. 16–17, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235, 5250–51. It would, therefore, seem clear that the CDA does not preempt district court jurisdiction over a subcontractor's actions. A deeper probe of this issue, however, convinces us that this court does lack subject matter jurisdiction over this action. Several considerations propel us to this conclusion.

We begin by examining the purpose of the CDA. It was enacted by Congress to cure the ills associated with the prior system of government contract dispute resolution. That system, in which contract disputes could be brought in a number of fora including the district courts, was "often too expensive and time consuming for the efficient and cost-effective resolution of small claims." S.Rep. No. 1118, 95th Cong., 2d Sess. 4, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235, 5238. The new system created under the CDA, in which all contract claims must be brought in either the Board of Contract Appeals or the Claims Court was adopted because it was thought to be more efficient in terms of time and money. *Id.* This efficiency in turn would facilitate the creation of government contracts since the executive agencies would be less circumspect about entering into contracts. The aims of the CDA, it seem to us, are the facilitation of both contract dispute resolution and the formation of government contracts.

Allowing subcontractors to bring actions against the USPS in district court would contravene these objectives. It is indeed true, as plaintiff points out, that the provisions of the CDA do not apply to subcontractors. *See* S.Rep. No. 1118, 95th Cong., 2d Sess. 16–17, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235, 5250–51. At the same time, however, Congress could not have expected subcontractors to have access to district courts after it closed the doors of district courts to contractors. The twin aims of the CDA reflect Congress' desire to eliminate the unnecessary costs arising from government contracts. Permitting subcontractors to bring actions against the USPS in district court, however, would increase these costs in several ways. First, an executive agency that has entered into a contract with a general contractor would potentially be subject to suit by dozens of subcontractors in district court, which, as the CDA indicates, Congress views as an inefficient forum for resolution of contract-based problems. Second, allowing subcontractors to proceed in district court would frustrate the formation of government contracts. The spectre of dozens of subcontractors bringing actions against a governmental agency in dis-

trict court may very well chill the agency's enthusiasm to enter into contracts.

Rather than allow subcontractors to proceed against the government directly in district court, Congress has created two avenues through which sub-contractors can pursue their remedies. The first of these avenues is sponsorship. The sponsorship rules were the "pre-CDA practice by means of which a subcontractor, otherwise lacking a privity relationship with the government, came into privity with the government by prosecuting its claim through and under its prime contractor's contract with the government." Defendant's Reply Memo at p. 6. In excluding subcontractors from the provisions of the CDA, Congress expected subcontractors to bring actions against the executive agencies via the sponsorship practice. S.Rep. No. 1118, 95th Cong., 2d Sess. 16, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235, 5250.

A second route open to subcontractors is to bring an action under the Miller Act. The Miller Act, 40 U.S.C. §§ 270a–270d, which is made applicable to the USPS by 39 U.S.C. § 410(b)(4)(B), was enacted for the purpose of protecting those who supply labor and material in the performance of federal construction contracts. Under the Miller Act, these suppliers are protected from financial loss resulting from the government contractor's failure to make payment for labor or material supplied on a government project. To ensure that they are protected, the Act requires that its contractors provide payment bonds to which unpaid subcontractors and suppliers may look as surety for their payment.

Thus, although Congress has precluded subcontractors from suing in district court, it has afforded them other means to pursue their actions. Indeed, in this case, plaintiff has brought an action against the general contractor and the sureties pursuant to the Miller Act.

The fact that Congress has retained the sponsorship rules rather than allow subcontractors to sue the government directly under the CDA provides further support for our holding. Congress elaborated on the reasons it decided to do this:

There are a number of advantages in the present sponsorship approach. From the Government's point of view, the sponsorship approach is the best method of administering complex procurements. By administering its procurements through a single point of contact, the Government's job is made both simpler and cheaper. The single point of contact approach also helps suppress frivolous claims.... Finally, by denying the subcontractors direct access to administrative remedies, the Government is forcing the prime contractor and the subcontractor to negotiate the disputes ...

S.Rep. No. 1118, 95th Cong., 2d Sess. 16–17, *reprinted in* 1978 U.S.Code Cong. & Ad.News 5235, 5250–51. Clearly Congress believed that allowing subcontractors to proceed directly against the government would be inefficient in terms of judicial resources and administration economy. This led Congress to preclude subcontractors from bringing actions directly against the government in the fora designated by the CDA. Allowing subcontractors to proceed directly to district court would clearly produce the same problems Congress sought to foreclose. It is more than reasonable, therefore, to conclude that Congress could not have intended to allow subcontractors to take this route.

Plaintiff cites two cases which seem to reach the contrary conclusion. In *Active Fire Sprinkler Corp. v. United States Postal Service*, 811 F.2d 747 (2d Cir.1987), a subcontractor brought an action against the USPS for an unpaid contract balance which the USPS owed the general contractor on a construction project. The court held that "governmental immunity presents no barrier to the assertion by Active of its equitable claim against USPS herein." *Id.* at 753. Similarly, in *Kennedy Electric Company v. United States Postal Service*, 508 F.2d 954 (10th Cir.1974), the court held that a subcontractor could directly bring an action for an equitable lien against the USPS.

These cases, however, are of no aid to the plaintiff, because they involve contracts that were executed before the CDA became

effective.[1] It is undisputed that prior to the enactment of the CDA, subcontractors could bring equitable actions in district courts, against the USPS. 39 U.S.C. §§ 401(1), 409(a).

For the reasons stated above, we grant the United States Postal Service's motion to dismiss this complaint against it for lack of subject matter jurisdiction.

---

1. The contract in *Active* was entered into in January 1977 and the contract in *Kennedy* was executed well before that date. The CDA did not become effective until March 1, 1979. *See* Pub.L. 95–563, Section 16, 92 Stat. 2391.