**UNITED STATES for the Use of S & G EXCAVATING, INC., and S & G Excavating, Inc., Plaintiffs,**

v.

**The SEABOARD SURETY COMPANY, the Austin Corporation, EUI Corporation and United States Postal Service, Defendants.**

**No. TH 97–276–C–T/F.**

United States District Court,
S.D. Indiana,
Terre Haute Division.

March 28, 2000.

969

James E. Sullivan, Cox Zwerner Gambill & Sullivan, Terre Haute, IN, for U.S. for Use of S & G Excavating, Inc. and S & G Excavating, Inc.

Sue Hendricks Bailey, Office of U.S. Attorney, Indianapolis, IN, for U.S. Postal Service.

Robert J. Hoffman, Hoffman Drewry Hancock & Simmons, Indianapolis, IN, Raymond M. Adler, Steers Sullivan, PC, Noblesville, IN, for Seaboard Sur. Co., Austin Co. and EUI Corp.

## ENTRY DISCUSSING MOTION TO DISMISS

TINDER, District Judge.

This matter comes before the court on the Motion to Dismiss filed by Defendant, United States Postal Service ("USPS") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The USPS contends that this court lacks subject mat-

ter jurisdiction over the claim brought against it by Plaintiffs, United States for the use of S & G Excavating, Inc. and S & G Excavating, Inc. ("S & G"), because the Contract Disputes Act ("CDA"), 41 U.S.C. § 609 *et seq.*, provides exclusive jurisdiction in the Court of Federal Claims. The USPS also contends that S & G's Complaint fails to state a claim upon which relief can be granted because a mechanic's lien cannot attach to public property and S & G is not entitled to an equitable lien on the contract retainage held by the USPS. After considering the motion and the submissions of the paries, the court finds as follows.

## I. Background Facts

S & G brings this suit to obtain payment for the labor and materials supplied in the construction of the USPS's new Processing and Distribution Facility in Terre Haute, Indiana ("the project").[1] The USPS hired Defendant Austin Corporation ("Austin") to be the general contractor of the project. As required by contract with the USPS and by the Miller Act, 40 U.S.C. § 270a, Austin provided a performance and payment bond, issued by Defendant Seaboard Surety Company ("Seaboard"). On September 25, 1996, Austin entered into a subcontract with Defendant EUI Corporation ("EUI"), to perform the concrete foundation work on the project. EUI then contracted with S & G to perform a portion of EUI's subcontracted foundation work. S & G performed work on the project until April 2, 1997. On that date, S & G sent EUI a bill in the amount of $72,526.40 for the work performed. EUI refused to pay the bill, and that refusal prompted the actions which led to this lawsuit.

On May 7, 1997, S & G filed a Notice of Intention to Hold Mechanic's Lien in the amount of $72,526.40 on the USPS project site. On September 25, 1997, S & G filed its Complaint with this court. In Count I,

S & G makes a claim against Austin's Miller Act bond, seeking payment of the amount EUI owes S & G. In Count II, S & G seeks to foreclose on its mechanic's lien on the contract retainage sums allegedly held by the USPS for Austin. On November 21, 1997, Austin and Seaboard filed a cross-claim against EUI, seeking indemnification for any amounts Austin and/or Seaboard are found to owe S & G and for all expenses incurred in defending this action.

On January 27, 1998, this court entered judgment by default for S & G against EUI in the amount of $72,526.40 plus attorney's fees and interest. On April 5, 1999, this court entered judgment by default for Austin and Seaboard against EUI, as to the Cross–Claim. Also on April 5, 1999, this court issued its Entry Discussing Pending Motions ("April 5, 1999 Entry"), wherein the court made the following rulings: summary judgment should be granted as to Count I because S & G failed to comply with the notice requirements of the Miller Act; Count II fails to state a claim upon which relief may be granted because a state law mechanic's lien cannot attach to government property and S & G failed to allege facts that would make equity appropriate (e.g., S & G failed to show that it did not have an adequate remedy at law).

## II. Discussion

### A. Standard of Review

In analyzing a motion to dismiss, the court must take as true all factual allegations in the Plaintiff's pleadings and draw all reasonable inferences in his favor. *See Looper Maintenance Serv. Inc. v. City of Indianapolis,* 197 F.3d 908, 911 (7th Cir. 1999) (citations omitted). Furthermore, "[i]n appraising the sufficiency of the complaint [the court] follow[s], of course, the accepted rule that a complaint should not be dismissed for failure to state a claim

---

**1.** All parties assume, as will the court, that the USPS owns the property on which the postal facility was built.

unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quotation omitted).

## B. Subject Matter Jurisdiction

The USPS argues that the CDA provides the exclusive jurisdiction over the subject matter of Count II (the only Count against the USPS) to the Court of Federal Claims. S & G counters by arguing that Congress provided a broad waiver of sovereign immunity for the USPS by enacting a "sue and be sued" clause.[2] in the Postal Reorganization Act of 1970 ("PRA"), 39 U.S.C. § 101 *et seq.,* which exposes the USPS to suit, irregardless of the CDA.

■■■■ "The United States, as sovereign, is immune from suit save as it consents to be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *Lehman v. Nakshian,* 453 U.S. 156, 160, 101 S.Ct. 2698, 69 L.Ed.2d 548 (1981). The United States Supreme Court has stated, in reference to the USPS, that "it must be presumed that when Congress launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued,' that agency is no less amenable to judicial process than a private enterprise under like circumstances would be." *Franchise Tax Bd. of Cal. v. United States Postal Serv.,* 467 U.S. 512, 518, 104 S.Ct. 2549, 81 L.Ed.2d 446 (1984) (quotation and citation omitted). However,

> the general authority to 'sue and be sued' is ... delimited by implied exceptions, ... [if it is] clearly shown that certain types of suits are not consistent with the statutory or constitutional scheme, that an implied restriction of the general authority is necessary to avoid grave interference with the performance of a governmental function, or that for other reasons it was plainly the purpose of Congress to use the 'sue and be sued' clause in a narrow sense.

*Id.* at 517–18 (quotation and citation omitted). The USPS argues that the CDA is evidence of a "statutory ... scheme" where the "plain[ ] ... purpose of Congress" is to limit the general waiver provision of the PRA.

■■ A majority of circuits that have considered the issue have concluded that the CDA divests district courts of jurisdiction over certain contract claims, including those in which the USPS is a party. *See Campanella v. Commerce Exch. Bank,* 137 F.3d 885, 890–91 (6th Cir.1998) (holding that the detailed provisions of the CDA preempted more general jurisdictional provisions, and that even if the Small Business Administration's "sue and be sued" clause was an independent jurisdictional grant, the CDA, in effect, withdrew that grant); *A & S Council Oil Co., Inc. v. Lader,* 56 F.3d 234, 241–42 (D.C.Cir.1995) ("The Contract Disputes Act, however, appears to be the paradigm of a 'precisely drawn, detailed statute' that preempts more general jurisdictional provisions.") (citing *Brown v. GSA,* 425 U.S. 820, 834, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976)); *United States v. J & E Salvage Co.,* 55 F.3d 985, 987 (4th Cir.1995) ("The review procedures under the CDA are exclusive of jurisdiction in any other forum. Thus, federal district courts lack jurisdiction over government claims against contractors which are subject to the CDA."); *Jackson v. United States Postal Serv.,* 799 F.2d 1018, 1022 (5th Cir.1986) (noting that "[w]ith the enactment of the Contract Disputes Act, the Claims Court [currently known as the United States Court of Federal Claims] received exclusive jurisdiction to hear any claim arising from a breach of a USPS procurement contract covered by the Act."); *cf. Licata v. United States Postal Serv.,* 33 F.3d 259, 264 n. 6 (3rd Cir.1994) (expressly reserves deciding the issue). *But see Wright v. United States Postal Serv.,* 29 F.3d 1426, 1428 (9th Cir.1994) (concluding that the CDA is not the exclusive basis for litigation of claims relating to

**2.** *See* 39 U.S.C. § 401(1).

government contracts, and that the CDA did not eliminate subject matter jurisdiction over subcontractors' actions to establish and foreclose equitable liens against the USPS). The Seventh Circuit has yet to decide the issue. *Cf. Johnson v. Runyon,* No. 94 C 1024, 1994 WL 285076, at *1 (N.D. III. June 24, 1994) (independent contractor working for the USPS "may seek redress solely under the Contract Disputes Act"). This court agrees with the reasoning of the courts finding that the CDA divests district courts of jurisdiction over certain contract claims against the government, including those in which the USPS is a party.[3]

■ S & G argues that "the scope of the CDA simply does not reach the claims brought by a party like S & G Excavating because S & G Excavating is not a 'contractor' as that term is defined by the CDA." (Pl.'s Response to Mot. to Dismiss at 3.) While S & G is correct that the CDA does not contain a provision allowing subcontractors (much less sub-subcontractors) to make a direct claim, *see* 41 U.S.C. §§ 601(4), 605, the applicability of the CDA is not determined by who may bring a claim; the applicability of the CDA is determined by the type of contract at issue. *See* 41 U.S.C. § 602.

The CDA's scope is limited to contracts "entered into by an executive agency for ... the procurement of property ...; the procurement of services ...; [or] the procurement of construction, alteration, repair or maintenance of real property." 41 U.S.C. § 602(a). Count II of S & G's Complaint seeks to place a lien on the retainage due on a contract for the construction of a post office. Such a construction contract falls squarely within the scope of the CDA, as does S & G's claim for an equitable lien on the retainage from

the contract. *See Eastern, Inc. v. Shelly's of Delaware, Inc.,* 721 F.Supp. 649, 650–53 (D.N.J.1989) (holding that the CDA preempts a subcontractor's action against the USPS for an equitable lien on the construction-contract retainage); *see also Reily Electrical Supply Co. v. Hight's Enterprises, Inc.,* No. Civ. A. 97–3881, 1998 WL 209457 (E.D.La. April 28, 1998) (same).

The legislative history of the CDA reflects a conscious decision to exclude the ability of subcontractors (i.e., those who do not have a contractual relationship with the government agency) from making direct claims. *See* Senate Report No. 95–1118, *reprinted in* 41 U.S.C.A. § 601 (West 1987) ("The recommendations of the Procurement Commission specifically exclude bringing subcontractors under the provisions of S. 3178. It is expected that the present sponsorship rules would remain in effect."). Congress made a conscious decision to provide only two avenues of relief for subcontractors such as S & G. The first avenue is the Miller Act (discussed at some length in the April 5, 1999 Entry). The second is the "sponsorship" route, which requires the prime contractor to "sponsor" the subcontractor's claim. The legislative history of the CDA indicates that Congress felt that sponsorship "is the best method of administering complex procurements" because "administering its procurement through a single point of contact [makes] the Government's job ... both simpler and cheaper." *Id.* Also, "[i]f direct access were allowed to all Government subcontractors, contracting officers might, without appropriate safeguards, be presented with numerous frivolous claims that the prime contractor would not have sponsored." *Id.* And finally,

---

**3.** Indeed, even *Wright* (the one circuit court opinion coming to the opposite conclusion) states that the argument favoring the exclusivity of the CDA over suits involving USPS contracts has "logical appeal", but concludes that "the law of the Ninth Circuit now compels the opposite conclusion" and relies solely

upon the holding of *Concrete Tie of San Diego, Inc. v. Liberty Const., Inc. (In re Liberty Construction, Inc.),* 9 F.3d 800 (9th Cir.1993). In *Campanella,* the Sixth Circuit said of *In re Liberty Construction:* "In *Liberty,* the Ninth Circuit's holding ... is devoid of analysis." *Campanella,* 137 F.3d at 891.

by denying the subcontractors direct access to administrative remedies, the Government is forcing the prime contractor and the subcontractor to negotiate their disputes. Allowing direct access would eliminate some incentive to negotiate a settlement. This might result in additional time-consuming and expensive litigation. The forced negotiation under the present system can create a psychological familiarity between the prime contractor and subcontractor, resulting in a greater likelihood of successful negotiation in future dealings.

*Id.* The Senate Report concludes:

> On balance, although some inequities presently exist with respect to the treatment of subcontractor claims, these inequities are best handled by improved subcontract administration by the prime contractor with appropriate supervision by the Government. The additional problems of contract administration and program management that would arise if subcontractors were given direct access to the Government in disputes and claims outweigh the benefit to be gained.

*Id.*

In other words, Congress consciously balanced the costs and the benefits of allowing subcontractors direct access to the Government and decided against it. If the court were to accept S & G's argument that subcontractors could bring suits in district court because they are excluded from direct participation under the CDA, then Congress' aims would be frustrated:

> Allowing subcontractors to bring actions against the USPS in district court would contravene these objectives. It is indeed true, as plaintiff points out, that the provisions of the CDA do not (on their face) apply to subcontractors. At the same time, however, Congress could not have expected subcontractors to have access to district courts after it closed the doors of district courts to contractors. The twin aims of the CDA reflect Congress' desire to eliminate the unnecessary costs arising from government contracts. Permitting subcontractors to bring actions against the USPS in district court, however, would increase these costs in several ways. First, an executive agency that has entered into a contract with a general contractor would potentially be subject to suit by dozens of subcontractors in district court, which as the CDA indicates, Congress views as an inefficient forum for resolution of contract-based problems. Second, allowing subcontractors to proceed in district court would frustrate the formation of government contracts. The specter of dozens of subcontractors bringing actions against a governmental agency in district court may very well chill the agency's enthusiasm to enter into contracts.

*RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1139 (6th Cir.1996) (quoting *Eastern, Inc.,* 721 F.Supp. at 651–52; other citations omitted).

■ The court agrees with this reasoning and finds that the CDA's preemption of district court jurisdiction extends to actions brought against the USPS by subcontractors (as well as sub-subcontractors).[4] *See Reily Elec. Supply Co.,* 1998 WL 209457, at *2–4 (CDA preempts a subcontractor's action against the USPS for an equitable lien on the construction-contract retainage); *Biebel Bros., Inc. v. United States Postal Serv.,* 772 F.Supp. 1117, 1118 (E.D.Mo.1991) (CDA preempts subcontractor's quantum meruit suit against the USPS); *Carroll v. United States Postal Serv.,* 764 F.Supp. 143, 144–45 (E.D.Mo.1991) (same); *Eastern, Inc.,* 721 F.Supp. at 650–53 (CDA preempts a subcontractor's action against the USPS for an equitable lien on the construction-

---

**4.** S & G has not argued that there is any meaningful difference between subcontractors and sub-subcontractors in the context of this discussion. Both subcontractors and sub-subcontractors fall outside of the CDA definition of "contractor" for the precise same reason—neither are in privity of contract with the Government.

contract retainage). This court lacks the subject matter jurisdiction to entertain S & G's cause-of-action against the USPS. Accordingly, the USPS's Motion to Dismiss will be **GRANTED** and this cause of action will be dismissed for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).

### C. Failure to State a Claim

■ The court notes that even if it had subject matter jurisdiction over S & G's cause-of-action against the USPS, the court would nonetheless grant the USPS's Motion to Dismiss on the grounds that a mechanic's lien cannot attach to public property, *see F.D. Rich Co., Inc. v. United States for Use of Indus. Lumber Co., Inc.,* 417 U.S. 116, 122, 94 S.Ct. 2157, 40 L.Ed.2d 703 (1974), and S & G has not alleged facts showing that it is entitled to an equitable lien on the retainage held by the USPS. The court addressed this issue at length in its April 5, 1999 Entry, and the court adopts that discussion here. (April 5, 1999 Entry at 22–38.) Just as it could not be the intent of Congress that the detailed procedures in the CDA be circumvented by subcontractors going to the district courts, so it is unlikely that Congress would want the Miller Act's notice requirements easily circumvented with equitable lien actions. When, for reasons beyond the sub-subcontractor's (or subcontractor's) control, the Miller Act cannot provide a complete remedy, then an equitable lien cause-of-action is eminently reasonable. But when the Miller Act's relief is unavailable to the sub-subcontractor simply because it failed to follow the notice procedure mandated by the Miller Act, then an equitable lien cause-of-action is unreasonable. As discussed in the April 5, 1999 Entry, S & G has failed to allege that it did not have an adequate remedy at law (i.e., the Miller Act), such that resort to equity would be appropriate.

### III. Conclusion

The court finds that S & G's action against the USPS is preempted by the CDA. Therefore, the USPS's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) will be **GRANTED** and this cause of action will be dismissed for lack of subject matter jurisdiction. Even if the court had subject matter jurisdiction over S & G's cause-of-action against the USPS, the court would nonetheless grant the USPS's Motion to Dismiss on the grounds that a mechanic's lien cannot attach to public property, and S & G has not alleged facts showing that it is entitled to an equitable lien on the retainage held by the USPS.

Between this Entry and the April 5, 1999 Entry, all of the pending claims brought by Plaintiffs, United States for the use of S & G Excavating, Inc., and S & G Excavating, Inc., are terminated or dismissed, so a judgment and order of dismissal will be entered.