**UNITED STATES of America for the use of Tech Coatings, Plaintiff,**

v.

**MILLER–STAUCH CONSTRUCTION COMPANY, INC., and Fidelity and Deposit Company of Maryland, Defendants.**

No. 94–4166–SAC.

United States District Court, D. Kansas.

Sept. 29, 1995.

J. Patrick Walters, Wichita, KS, for Tech Coatings.

Christopher F. Pickering, G. William Quatman, Shughart, Thomson & Kilroy, Kansas City, MO, for Miller–Stauch Construction Co., Inc., Fidelity & Deposit Company of Maryland.

## MEMORANDUM AND ORDER

CROW, District Judge.

The case comes before the court on the defendants' motion to dismiss for lack of jurisdiction, to compel arbitration, or, in the alternative, to dismiss for improper venue (Dk. 14), and on the plaintiff's motion for sanctions and attorney's fees against the defendants for not conducting themselves in good faith during the mediation process. (Dk. 16). This is a case brought under the Miller Act, 40 U.S.C. § 270a *et seq.*, in which the plaintiff subcontractor, Tech Coatings, seeks to recover from the defendant prime contractor, Miller–Stauch Construction Company, Inc. ("Miller–Stauch"), and from the defendant surety, Fidelity and Deposit Company of Maryland, on the contractor's payment bond.

As alleged in the complaint, the United States, acting through the Small Business Administration, contracted with Miller–Stauch for the construction of a child care facility in the offices of the Federal Aviation Administration in Olathe, Kansas. In compliance with the Miller Act, 40 U.S.C. § 270a(a)(2), Miller–Stauch obtained a payment bond with the surety, Fidelity and Deposit Company of Maryland, "for the protection of all persons supplying labor and material in the prosecution of the work provided for in" the contract. On April 1, 1993, Miller–Stauch entered into a subcontract in which Tech Coatings would provide and apply all special coatings on the child care facility at the agreed price of $14,995.00. Tech Coatings alleges that though it performed its contractual obligations and more, the defendant Miller–Stauch has failed to pay any part of the original contracted price. Tech Coatings further alleges that it lost profits and incurred additional costs because of Miller–Stauch's delays, design changes, excessive requests for product and/or work submittals, and premature demand to complete the subcontracted work. Tech Coatings seeks to recover $41,847.95, as being the sum owed after totalling the amount due under the subcontract, plus charges for the additional work that Miller–Stauch had ordered, and plus its damages as a result of the Miller–Stauch's delays and demands.

## CONTRACT DISPUTES ACT

The defendants insist Tech Coatings' suit is covered by the Contract Disputes Act ("CDA"), 41 U.S.C. § 601, *et seq.* The CDA requires all covered disputes to be submitted first to a contracting officer and authorizes then either an appeal to a board of contract appeals or a direct action suit in the United States Court of Federal Claims. 41 U.S.C. §§ 605, 606, 609(a)(1). By enacting the CDA, Congress intended to create a comprehensive and uniform adjudication scheme for government contract claims. *United States v. Seaboard Sur. Co.,* 817 F.2d 956, 961–62 (2nd Cir.), *cert. denied,* 484 U.S. 855, 108 S.Ct. 161, 98 L.Ed.2d 115 (1987); *Eastern, Inc. v. Shelly's of Delaware, Inc.,* 721 F.Supp. 649, 650 (D.N.J.1989). The effect of the CDA is to divest district courts of jurisdiction of federal government contract disputes. *Seaboard Sur. Co.,* 817 F.2d at 962; *McDonnell Douglas Corp. v. United States,* 754 F.2d 365, 370 (Fed.Cir.1985). If Tech Coatings' claims are subject to the CDA, then this court would lack subject matter jurisdiction.

"[T]he scope of the CDA is, by design, narrow." *George W. Kane, Inc. v. United States,* 26 Cl.Ct. 655, 661 (1992). The CDA "speaks only of claims between a contractor and the *government.*" *Riley Elec. Co. v. American Dist. Telegraph Co.,* 715 F.Supp. 813, 817 (W.D.Ky.1989) (citing 41

U.S.C. § 605(a)).[1] By its own plain terms, the CDA encompasses only claims or disputes in which the government is a party and makes no provision for disputes or claims between contractors. *Allied Sys. Co. v. Marinette Marine Corp.*, No. 95–268–FR, 1995 WL 434340, at *3, 1995 U.S.Dist. LEXIS 10363, at *8 (D.Or. July 19, 1995); *Riley Elec.*, 715 F.Supp. at 817–18; *see United States ex rel. Jervis B. Webb Co. v. Newberg Construction Co.*, No. 93–C–5219, 1995 WL 263415, at *2, 1995 U.S.Dist. LEXIS 5872, at *4 (N.D.Ill. May 2, 1995) (The CDA "does not provide for administrative resolution of disputes in which the government is not a party."); *see, e.g., S & M Constructors, Inc. v. Foley Co.*, No. 92–0142, 1992 WL 37515, 1992 U.S.Dist. LEXIS 2249 (W.D.Mo. Feb. 21, 1992) ("While it [the CDA] has been construed to affect disputes between subcontractors and the Government, the present arbitration does not, as described, directly affect the Government. . . ."). Therefore, the CDA does not govern contract disputes between the prime contractor and the subcontractor. *Allied Sys.*, 1995 WL 434340, at *3, 1995 U.S.Dist. LEXIS 10363, at *8; *Newberg Construction*, 1995 WL 263415, at *3, 1995 U.S.Dist. LEXIS 5872, at *8; *Riley Elec.*, 715 F.Supp. at 818; *see, e.g., Bohn v. United States*, 724 F.Supp. 443 (N.D.Tex.1989) (Court exercised Miller Act jurisdiction over subcontractor's claim against prime contractor but dismissed prime contractor's crossclaim against the government as subject to the CDA); *COSMCO, Inc. v. Head, Inc.*, 70 Ohio App.3d 544, 591 N.E.2d 803 (1990) (Appeals court upheld the judgment for the subcontractor as to the unpaid balance of the original subcontract but, relying on the CDA, reversed the judgment as to the additional awards for changes in work that were initiated by the government, were made pursuant to the prime contract, and were not the subject of any agreement between the prime contractor and the subcontractor.)

■ It is by the terms of the CDA, not any contract, that exclusive jurisdictional authority comes to reside with a contracting officer. *Allied Sys. Co. v. Marinette Marine Corp.*, 1995 WL 434340, at *3, 1995 U.S.Dist. LEXIS 10363, at *8. A subcontract that requires the submission of disputes to a contracting officer does not expand the officer's jurisdictional authority. *Id.* Nor is it sufficient "to deprive this court of jurisdiction." *Riley*, 715 F.Supp. at 819; *see also Allied Sys. Co. v. Marinette Marine Corp.*, 1995 WL 434340, at *3, 1995 U.S.Dist. LEXIS 10363, at *8. It matters not to this court's jurisdiction that the subcontract requires Tech Coatings to follow the same dispute resolution procedures found in the CDA.[2]

■ Tech Coatings' complaint plainly alleges that Miller–Stauch is at fault for not paying any part of the original contract price or the additional charges and for the increased costs and lost profits caused by Miller–Stauch's delays, design changes, excessive requests for product and/or work submittals, and premature demand to complete the subcontracted work. Neither Tech Coatings nor the defendants blame the government for any of the circumstances or changes for which Tech Coatings now seeks to recover damages. The defendants do not even attempt to argue that Tech Coatings' claims involve the government. On the record as it presently stands, the court finds that Tech Coatings' claims are not subject to the CDA

---

**1.** Section 605(a) provides in relevant part:
"All claims by a contractor against the government relating to a contract shall be in writing and shall be submitted to the contracting officer for a decision. All claims by the government against a contractor relating to a contract shall be the subject of a decision by the contracting officer."

**2.** Before leaving the CDA, the court wants to note an observation. The court's interpretation of the CDA as not governing disputes between the prime contractor and the subcontractor closely resembles the very terms of Article 14 of the parties' subcontract on dispute resolution.

Paragraph 14.1 sets out the general rule for dispute resolution procedures subject to the exception provided in the subsequent paragraph. Paragraph 14.2 provides in pertinent part: "Where the dispute is solely between the Contractor and Subcontractor and does not involve the Owner, all such disputes shall be resolved in the Circuit Court of Jackson County, Missouri." Consequently, the subcontract does not require any dispute resolution procedures where the dispute is solely between the prime contractor and the subcontractor and does not involve the government owner.

and that this court has jurisdiction over those claims.

## ARBITRATION AGREEMENT

Citing both the Kansas Uniform Arbitration Act, K.S.A. 5–401 *et seq.*, and the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, the defendants ask the court to compel arbitration pursuant to the terms of the subcontract. Tech Coatings opposes the motion arguing that the defendants waived their right to arbitration by waiting more than nine months after the suit was filed to request arbitration.

■ For this court to order arbitration, it must find that the parties have agreed to arbitrate. " '[N]o party can be forced to arbitrate unless that party has entered an agreement to do so.' " *McCarthy v. Azure*, 22 F.3d 351, 359 (1st Cir.1994) (quoting *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 511 (3rd Cir.1990)). For this reason, the duty to arbitrate often depends on contract interpretation. *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1165 (8th Cir.1984).

■ As discussed above in footnote two, the dispute resolutions procedure that the defendants seek to enforce does not apply to disputes exclusively between the subcontractor and the prime contractor. Neither party devotes any portion of their briefs to discussing the particular terms of Article 14 of the subcontract [3] or to arguing whether their dispute falls within the scope of claims or controversies subject to the mandatory dispute resolution procedure. Since the defendants are the side seeking to compel arbitration, it is incumbent on them to show that the present dispute is one on which the parties have agreed to arbitrate. They, however, have not made any such showing. Looking only at what is alleged in Tech Coatings' complaint, the court understands the dispute to be solely between Tech Coatings and Miller–Stauch. Based on the arguments and record presented, the court finds that the

parties' agreement to arbitrate does not encompass Tech Coatings' claims.

## IMPROPER VENUE

■ The defendants' last challenge rests on the forum selection clause found at ¶ 14.2 of the subcontract, which reads:

14.2 Where the dispute is solely between the Contractor and Subcontractor and does not involve the Owner, all such disputes shall be resolved in the Circuit Court of Jackson County, Missouri. The foregoing limitation shall not control if the claim involves a mechanic's lien and the applicable mechanic's lien statutes require otherwise.

Tech Coatings' only opposition is a confused argument that enforcement of this clause would violate a "strong public policy" of Kansas.

■ Forum selection clauses are accorded prima facie validity. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972). "[A] party resisting enforcement carries a heavy burden of showing that the provision itself is invalid due to fraud or overreaching or that enforcement would be unreasonable and unjust under the circumstances." *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir.) (citations omitted), *cert. denied*, 506 U.S. 1021, 113 S.Ct. 658, 121 L.Ed.2d 584 (1992). The use of "shall" in a forum selection clause "generally indicates a mandatory intent unless a convincing argument to the contrary is made." *Milk 'N' More, Inc. v. Beavert*, 963 F.2d 1342, 1346 (10th Cir.1992). "The prevailing rule is that where venue is specified with mandatory language the clause will be enforced." *Zimmerman Metals, Inc. v. United Engineers & Constructors, Inc.*, 720 F.Supp. 859, 861 (D.Colo.1989) (citation omitted). The venue requirement under the Miller Act, 40 U.S.C. § 270b(b), is like any other conventional venue provision; it can be contractually waived by a valid forum selection clause. *United States on Behalf of Pittsburgh Tank & Tow-*

---

3. Miller–Stauch's subcontract addendum dated December 3, 1992, deletes the arbitration paragraphs in the original contract and substitutes for them the dispute resolution paragraphs that have been discussed above. Consequently, Tech Coatings' arguments with regards to the former arbitration provisions are utterly devoid of merit.

**1214**

er, Inc. v. G & C Enterprises, Inc., 62 F.3d 35, 36 (1st Cir.1995).

■ Tech Coatings begins its argument with the general rule stated in *M/S Bremen* that "[a] contractual choice-of-forum clause should be held unenforceable if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." 407 U.S. at 15, 92 S.Ct. at 1916 (citation omitted). Tech Coatings then makes the unexplained leap to the Kansas choice of law rules governing the interpretation of contracts.[4] Based on those rules, Tech Coatings reaches the untenable conclusion that venue is proper in Kansas. The court finds absolutely no merit to the plaintiff's argument.[5] Having been presented with no valid objection, the court will enforce the forum selection clause.

■ When venue is improper, the court may, in the interests of justice, transfer the case to a district court in which it could have been brought. 28 U.S.C. § 1406(a). Transfer should be the usual course rather than dismissal. 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3827 at 274 (1986). The "interests of justice" proviso in § 1406(a) is not a "talismanic incantation." *Ross v. Colorado Outward Bound School*, 822 F.2d 1524, 1526 n. 1 (10th Cir.1987). If upon refiling in the new venue the action now would be barred by the statute of limitations, then it is in the interest of justice and "particularly appropriate" to transfer. *Sinclair v. Kleindienst*, 711 F.2d 291, 294 (D.C.Cir. 1983) (citing *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 430, 85 S.Ct. 1050, 1055, 13 L.Ed.2d 941 (1965) (Section 1406(a) prevents "the unfairness of barring a plaintiff's action solely because a prior timely action is dismissed for improper venue after the applicable statute of limitations has run.")); *see also McDonald v. Doolittle*, 885 F.Supp. 233, 235 (D.Kan.1995).

Miller Act suits must be commenced before the expiration of one year after the day on which the last of the labor was performed or the material was supplied by the plaintiff. 40 U.S.C. § 270b(b). From what is alleged in the plaintiff's complaint, it appears that the one-year limitations period has expired since its filing. Consequently, court finds that the interest of justice is served by transferring this case to the Western District of Missouri.

## TECH COATINGS' MOTION FOR SANCTIONS AND ATTORNEY'S FEES

The court summarily denies Tech Coatings' motion as lacking a factual basis for the relief requested. The court is satisfied by the defendants' explanation and finds that they did not engage in any conduct during the mediation process that warrants sanctions.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss for lack of jurisdiction, to compel arbitration, or, in the alternative, to dismiss for improper venue (Dk. 14) is denied in part and granted in part;

IT IS FURTHER ORDERED that the plaintiff's motion for sanctions and attorney's fees (Dk. 16) is denied;

IT IS FURTHER ORDERED that the case is transferred pursuant to 28 U.S.C. § 1406(a) to the Western District of Missouri for all further proceedings.

---

4. The principle of *lex loci contractus* would not even apply here, for this court is not sitting in diversity but is exercising jurisdiction under the Miller Act.

5. The determination that Kansas law should govern the interpretation of a contract is entirely

distinct from the determination of proper venue. The court knows of no decision finding a forum selection clause unenforceable simply because its enforcement would require a court sitting in one state to apply the law of another state.