**Michael H. HOLLAND, A. Frank Dunham, Marty D. Hudson, and Elliot A. Segal, as Trustees of the United Mine Workers of America 1992 Benefit Plan, Plaintiffs,**

v.

**KING KNOB COAL CO., INC.; Anker Energy Corporation; and Reliable Coal Corporation, Defendants.**

**Civil Action No. 99–462.**

United States District Court,
W.D. Pennsylvania.

March 2, 2000.

Ralph A. Finizio, Houston Harbaugh, Pittsburgh, PA, David W. Allen, United Mine Workers of America, Washington, DC, for Plaintiffs.

Charles L. Woody, Spilman, Thomas & Battle, Charleston, WV, Jon Hogue, Hogue & Lannis, Pittsburgh, PA, for Defendants.

## MEMORANDUM OPINION

CINDRICH, District Judge.

This action arises from the defendants' alleged failure to pay certain beneficiary premiums to a welfare benefit plan. As trustees of the plan, plaintiffs Michael H. Holland, A. Frank Dunham, Marty D. Hudson, and Elliot A. Segal (collectively referred to as the "Trustees"), filed the instant suit to collect such premiums from the defendants. Pending before the court is the defendants' motion to dismiss for lack of personal jurisdiction and improper venue, pursuant to Fed.R.Civ.P. 12(b)(2) and (3), or, in the alternative, to transfer venue to the United States District Court for the Northern District of West Virginia, pursuant to 28 U.S.C. Section 1406(a).

### I. Background

The Trustees brought the instant action to collect delinquent monthly per beneficiary premiums and other amounts owed to the United Mine Workers of America 1992 Benefit Plan (the "Plan") by defendants King Knob Coal Co., Inc. ("King"); Anker Energy Corporation ("Anker"); and Reliable Coal Corporation ("Reliable"). The Plan is an irrevocable trust fund created pursuant to Section 9712 of the Coal Industry Retiree Health Benefit Act of 1992 (the "Coal Act"), 26 U.S.C. Section 9712, which provides health benefits to certain retired coal miners. The Plan is also an employee welfare benefit plan within the meaning of Section 3(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. Section 1002(3), and a multiemployer plan within the meaning of Section 3(37) of ERISA, 29 U.S.C. Section 1002(37). 26 U.S.C. Sections 9712(a)(2)(B) and (C).

The Trustees contend that the defendants are "related persons" under Section 9712(d)(4) of the Coal Act, 26 U.S.C. Section 9712(d)(4), and therefore, are jointly and severally liable for amounts owed the Plan. The Trustees further contend that King is a "1988 last signatory operator" as that term is defined in Section 9712(d)(6) of the Act, 26 U.S.C. Section 9712(d)(6).

## II. *Motion to Dismiss*

### A. *Personal Jurisdiction*

The defendants contend that although the Trustees filed suit under the Coal Act, which provides for nationwide service of process, the assertion of personal jurisdiction must satisfy the due process standards of the Fifth Amendment to the United States Constitution which requires an analysis of fundamental fairness considerations to determine if such jurisdiction exists. They maintain that the court's exercise of personal jurisdiction over them would violate these fundamental due process principles. The defendants state in support of their motion that:

— King is a West Virginia corporation with an office in Morgantown, West Virginia;

— King is not a foreign business registered to conduct business in Pennsylvania and does not conduct business in the state;

— Reliable was dissolved on June 23, 1983 and has not conducted any business since that time;

— At the time of its dissolution, Reliable was wholly-owned by King;

— Anker is a Delaware corporation with an office in Morgantown;

— Anker is registered to do business in Pennsylvania, however, it has no office or coal mines in the Western District of Pennsylvania and does not own any property in that jurisdiction;

— The three defendants neither reside nor conduct their normal business of mining coal in the Western District of Pennsylvania; and

— All of the defendants' books, records and personal knowledge about the subject matter are located in West Virginia.

Defendants' Motion To Dismiss ("Defs' Mot.") p. 2 and Ex. A.

In response, the Trustees argue that ERISA and the Coal Act allow the Plan to sue for delinquencies anywhere the plan is administered and provides for nationwide service of process for such actions. Under these circumstances, they argue, courts have routinely held that the exercise of personal jurisdiction satisfies the requirements of due process where the defendant has national minimum contacts, i.e., minimum contacts with the United States.

Section 4301 of ERISA, 29 U.S.C. Section 1451, governs the specific venue and service of process requirements in the instant action.[1] Section 4301(d), 29 U.S.C. Section 1451(d) reads as follows:

**Venue and service of process**

An action under this section may be brought in the district where the plan is administered or where the defendant resides or does business, and process may be served in any district where a defendant resides, does business, or may be found.

---

1. Section 9721 of the Coal Act, 26 U.S.C. Section 9721, provides that Section 4301 of ERISA, 29 U.S.C. Section 1451, shall apply to any claim arising out of an obligation to pay any amount required to be paid by the Coal Act in the same manner as any claim arising out of an obligation to pay withdrawal liability and that a signatory operator and related persons shall be treated in the same manner as employers. Section 4301(b) of ERISA, 29 U.S.C. Section 4301(b), directs that failure by an employer to pay withdraw-

al liability shall be treated in the same manner as a delinquent contribution. Thus, delinquent obligations imposed by the Coal Act, like delinquent withdrawal liability, are treated as delinquent contributions under ERISA. Section 4301(c), 29 U.S.C. Section 1451(c), grants district courts subject matter jurisdiction over civil actions to collect withdrawal liability. Section 4301(d) of ERISA, 29 U.S.C. Section 1451(d) governs the specific venue and service of process requirements for such actions.

The parties cite to *Trustees of National Elevator Industry Pension, Health Benefit and Educational Funds v. Continental Elevator Co.*, 1999 WL 305370 (E.D.Pa. May 12, 1999) wherein Judge Broderick of the United States District Court for the Eastern District of Pennsylvania provides a thorough analysis of the import of a nationwide service statute virtually identical to Section 4301(b). Judge Broderick explains that:

Where a federal statute explicitly provides for nationwide service of process, the Court's exercise of personal jurisdiction is "not constrained by the 'minimum contacts' standard" established by International Shoe. *Trustees of National Elevator Industry Pension, Health Benefit and Educational Funds v. Ramchandani*, No. Civ.A. 98–6108, 1999 WL 179748 at *1 (E.D.Pa. Mar.12, 1999) (Giles, C.J.). Although the "Supreme Court has never ruled on the issue of reconciling the minimum contacts doctrine with nationwide service of process authorized by federal statute, [ ] 'all the courts of appeals that have addressed the issue have applied a national contacts standard when process is served under an applicable federal service provision.'" *Id.* (quoting 4 Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure Section 1067.1 at 311 (1987)). *See also Trustees of National Elevator Industry Pension, Health Benefit and Educational Funds v. Nordic Industries, Inc.*, No. Civ.A. 96–5151, 1997 WL 83742 at *4 (E.D.Pa. Feb.14, 1997). Under a national contacts standard, the Court must judge the defendant's contacts with the United States as a whole as the pertinent forum rather than with any particular state. *See, e.g. Trustees of National Elevator Industry Pension, Health Benefit and Educational Funds v. Ramchandani*, No. Civ.A. 98–6108, 1999 WL 179748 at *1 (E.D.Pa. Mar.12, 1999) (Giles, C.J.); *Trustees of National Elevator Industry Pension, Health Benefit and Educational Funds v. Nordic Industries, Inc.*, No. Civ.A. 96–5151, 1997 WL 83742 at *4 (E.D.Pa. Feb.14,

1997). The Third Circuit is in accord with this approach. *See Max Daetwyler Corp. v. R. Meyer*, 762 F.2d 290, 294 n. 3 (3d Cir.1985) ("The constitutional validity of national contacts as a jurisdictional base is confirmed by those statutes which provide for nationwide service of process....")

*Id.* at * 2.

The defendants do not dispute that they have sufficient national contacts. They maintain instead that even under a nationwide service statute, the exercise of personal jurisdiction must comport with the fundamental due process principles that are designed to protect a defendant's individual liberty interests against the burden of litigating in an inconvenient forum.

The defendants cite to *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617 (4th Cir.1997), wherein the Fourth Circuit weighed the potential inconvenience and unfairness to out-of-state defendants against Congress's articulated policy of allowing nationwide service for the claim at issue, to determine whether personal jurisdiction offended the defendants' due process rights. The court stated that:

Although 18 U.S.C. Section 1965 is entitled "Venue and process," the fact that it also authorizes service of process makes it relevant to personal jurisdiction because of Federal Rule of Civil Procedure 4(k)(1)(D). "Where," as here, "Congress has authorized nationwide service of process ... so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant." *Hogue v. Milodon Eng'g, Inc.*, 736 F.2d 989, 991 (4th Cir.1984); *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 942 (11th Cir.1997) (section 1965(d) of RICO statute, providing for service in any judicial district in which defendant is found, provides statutory basis for personal jurisdiction).

The due process constraint on service under Federal Rule of Civil Procedure

4(k)(1)(D), is not, however, grounded in the Fourteenth Amendment, which circumscribes service under state process pursuant to Rule 4(k)(1)(A). *See Republic of Panama*, 119 F.3d at 942; *Hogue*, 736 F.2d at 991. Rather, it is the Due Process Clause of the Fifth Amendment which constrains the exercise of the federal government's sovereign powers. *See id.; Omni Capital*, 484 U.S. at 103–04, 108 S.Ct. at 409; *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites*, 456 U.S. 694, 702 n. 10, 102 S.Ct. 2099, 2104 n. 10, 72 L.Ed.2d 492 (1982). The Fifth Amendment's Due Process Clause not only limits the extraterritorial scope of federal sovereign power, but also protects the liberty interests of individuals against unfair burden and inconvenience. *See, e.g., Republic of Panama*, 119 F.3d at 945–48; cf. *World-Wide Volkswagen*, 444 U.S. at 291–92, 100 S.Ct. at 564 (noting that the minimum contacts test under the Fourteenth Amendment's Due Process Clause functions both to protect states in their status as equal sovereigns and to protect individuals against unfair burden and inconvenience). However, when the defendant is located within the United States, he "must look primarily to federal venue requirements for protection from onerous litigation," *Hogue*, 736 F.2d at 991, because "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern," *Republic of Panama*, 119 F.3d at 947. *Id.* at 626–27.

The court further noted that a congressional policy choice for nationwide service of process should be afforded substantial weight and that the burden is on the defendant to show that the burden of distant litigation is so great as to put him or her at a severe disadvantage. *Id.* at 627. The court ultimately held that although the out-of-state defendants would suffer some inconvenience, the exercise of personal jurisdiction by the forum in question did not offend the defendants' due process rights. *Id.*

In contrast, the Eighth Circuit recently held in *In re Federal Fountain Inc.*, 165 F.3d 600 (8th Cir.1999) (en banc) that a Fourth Circuit type of balancing test was not a required part of the personal jurisdiction analysis under a nationwide service statute. The court observed that:

> [a]lthough there were a few appellate courts that have adopted the view that the constitutionality of the application of statutes granting nationwide jurisdiction to federal courts depends on whether the proposed forum puts a defendant at a severe disadvantage, . . . in defending the action and, if so, whether something called the "federal interest," in litigating the matter in that forum outweighs attendant inconveniences to a defendant . . . we detect nothing in the case law already discussed that suggests that due process, or any other constitutional concern, requires such an approach to deciding the jurisdictional question that this case presents. We note, too, that the vindication of federal law principles in a federal court would seemingly always be sufficient to carry the day in favor of the exercise of federal jurisdiction, even if we felt obliged to engage in a balancing enterprise, which, in fact, we do not.

*Id.* at 602 (internal quotations omitted).

Noting that it was "aligning itself with virtually every other court that has ruled on the issue," *id.* at 601, the court further observed that "there is 'nothing in the Constitution which forbids Congress to enact that . . . [a federal trial court] . . . shall . . . have the power to bring before it all the parties necessary to its decision.'" *Id.* at 602 (quoting *United States v. Union Pacific R. Co.*, 98 U.S. 569, 604, 25 L.Ed. 143 (1878)); *see also Robertson v. Railroad Labor Board*, 268 U.S. 619, 622, 45 S.Ct. 621, 69 L.Ed. 1119 (1925) (Congress may provide that "the process of [any] district court shall run into every part of the United States.") The court held that for purposes of personal jurisdiction, "the fairness that due process of law requires

relates to the fairness of the exercise of power by a particular sovereign. . . ." *Id.* at 602 (quotation omitted).

In the case before it, the court found that the defendant had sufficient contacts with the United States to support the fairness of the exercise of personal jurisdiction over him by a United States court. *Id.* The court concluded that "[t]he inconveniences associated with a particular forum . . . can always be brought to the district court's attention by means of a motion under 28 U.S.C. 1404(a), which provides for transfer of venue '[f]or the convenience of parties . . . in the interest of justice.' " *Id.*

■ In sum, the defendants do not contend that service of process was improper. Under the Eighth Circuit's approach, therefore, our exercise of personal jurisdiction over the defendants is proper. Personal jurisdiction would also be proper under the Fourth Circuit's approach. The defendants' submission on the issue of convenience falls woefully short, consisting of one bald assertion that their books and records are located in West Virginia. Indeed, the defendants have presented no evidence which would indicate that this is

the highly unusual case where the inconvenience to the defendants of litigating in this court would rise to the level of a constitutional concern.

Accordingly, the defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction will be denied. Any inconvenience to the defendants associated with litigating in this forum will be addressed in the analysis of the defendants' request for a transfer of venue.[2]

### B. Venue

The defendants argue that venue is not proper in this district because the Trustees assert in the amended complaint that the Plan is administered in Washington, D.C.

The Trustees argue in response that although the Plan is administered in the District of Columbia, venue is proper in this court because the Plan is also administered in the Western District of Pennsylvania. The Trustees submitted the affidavit of Kyu W. Lee, an employee of the Plan, wherein he states that the Plan has field offices in Washington, Pennsylvania, and Johnstown, Pennsylvania and that "[e]mployees at these field offices receive

---

**2.** The several United States Courts of Appeals that have equated service of process with personal jurisdiction under a national service of process statute have dispensed with the notion that due process requires in every case that there be minimum contacts between a defendant and the forum in which he is expected to answer before the court that issued the process may constitutionally assume personal jurisdiction over that defendant. These courts have applied instead a national contacts standard. In *In Re Federal Fountain Inc.*, 165 F.3d 600 (8th Cir.1999), one of the more illuminating cases on the issue, the United States Court of Appeals for the Eighth Circuit explained the reasoning behind such approach. In sum, one should look to the individual sovereign. In the case of the sovereign of the United States, Congress is free to enact legislation subjecting one to the jurisdiction of any court of that sovereign. The Supreme Court has not yet ruled on the constitutionality of such statutes and the defendants have not raised the issue. Thus, our present ruling adheres to the weight of the current authority. We note, however, that

these statutes transform the personal jurisdiction minimum contacts requirement to an essential venue component. For example, the national service of process statute at issue in this case, 29 U.S.C. Section 1451(d), is labeled "venue and service of process" and states that an action may be brought in a district where either the defendant resides or does business or where the plan is administered. In any of these situations the defendant would most likely have sufficient minimum contacts to support the court's exercise of personal jurisdiction, as the defendant should reasonably anticipate being haled into court there. Under this approach, however, the defendant must appear before the court that issued service of process and submit to that court's jurisdiction, even in the absence of minimum contacts, and then move for a transfer of venue. In sum, while there is ample precedent on the issue, we have not seen a thorough discussion of why the constitutional principle of minimum contacts, and all the practical protections it furnishes to distant defendants, disappears when Congress enacts a rule regarding service of process.

**439**

pension and health applications from beneficiaries and assist beneficiaries in compiling the required documents and other information needed for processing, and perform other administrative duties as required by the [Plan]." Plaintiffs' Opposition To Defendants' Motion To Dismiss ("Pls' Opp'n") (Doc. No. 10) at Ex. A ("Kyu Lee Decl.").

As previously noted, venue is proper "in the district where the plan is administered...." 29 U.S.C. Section 1451(d). The issue we are presented with is whether under this language a plan may be administered in more than one district. The parties have cited no cases, nor have we uncovered any, that have addressed this issue.

"The starting point for interpretation of a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 835, 110 S.Ct. 1570, 108 L.Ed.2d 842 (1990) (internal quotation marks omitted); *see Edelman v. Commissioner of Social Sec.,* 83 F.3d 68, 71 (3d Cir.1996) ("The first principle in determining the meaning of a statute is the plain language of that statute. Absent clear legislative intent to the contrary, that is conclusive." (citation omitted)).

We begin, therefore, with the language of the statute. The language "the district where the plan is administered" is singular and indicates one district. The Trustees have pointed to no evidence, nor are we aware of any, of a clearly expressed legislative intent contrary to this plain language.

The Trustees' interpretation of this language, on the other hand, does not correspond to the plain language of the statute. They contend that the statute provides for proper venue in any district where at least some administrative functions for a plan are carried out. If that were the intended result, however, Congress could have easily substituted the word "the," which appears immediately before "district," with the word "any."

We note that the statute's singular language does not conflict with the idea that Congress intended the venue provision of Section 1451(d) to be construed for the protection of multiemployer plans in litigation with employers. *See Delta Air Lines, Inc. v. Western Conference of Teamsters Pension Trust Fund,* 722 F.Supp. 725, 729 (N.D.Ga.1989). The statute provides a plan with a broad choice of venues to enforce its provisions that are all logically connected with the parties, i.e., any district where an employer resides or does business or in the district where the plan is administered. What the statute does not provide for, however, is a choice of venue that has no connection with the underlying suit or the parties other than the plan's performance of certain cursory administrative functions within the district. We doubt that Congress intended such result and think it unlikely that such a broad venue provision is necessary to adequately protect a plan.

Accordingly, we find that the plain language of Section 1451(d) refers to only one district where a plan is administered. Thus, we are left to determine where the Plan is administered.

The general definition of the word "administer" is "to manage or supervise the execution, use, or conduct of." Merriam-Webster's Collegiate Dictionary 15 (10th ed.1999).[3] We look, therefore, to the dis-

---

**3.** See *Sprinzen v. Supreme Court of New Jersey,* 478 F.Supp. 722, 723–24 (S.D.N.Y.1979) wherein the court stated the following with regard to the determination of where a plan is administered for purposes of another ERISA venue provision practically identical to Section 1451(d):

Plaintiffs contend that in determining "where the plan is administered" [under 29 U.S.C. Section 1132(e)(2) ] we are to focus upon the plan, and that we should adopt the general definition of "administer" which is "to manage."
\*\*\*

trict where the Plan is managed or supervised.

■ The Trustees state in the amended complaint that they conduct the business of the Plan at 4455 Connecticut Avenue, N.W., Washington, D.C. Although the Plan has field offices located in Western Pennsylvania, it appears that such offices are essentially data gathering centers which operate at the direction of the Trustees from the Plan's main office in Washington, D.C. *See* Kyu Lee Decl. Thus, we find that the District of Columbia is "the district where the plan is administered" as defined in Section 1451(d), not the Western District of Pennsylvania.

Accordingly, we find that the Western District of Pennsylvania is an improper venue for the instant action. As we discuss below, however, we will not dismiss the Trustees' case but instead transfer their action to the United States District Court for the Northern District of West Virginia.

### C. *Transfer Venue*

As previously noted, the defendants' have moved in the alternative to have the Trustees' case transferred to the United States District Court for the Northern District of West Virginia if the court finds that venue is not proper in the Western District of Pennsylvania, but decides to exercise its discretion to not dismiss the case.

Pursuant to 28 U.S.C. Section 1406(a), the court has discretion not to dismiss the Trustees' case for improper venue and instead transfer it to a district where venue would be proper. *See United States v. Miller–Stauch Construction Co., Inc.*, 904 F.Supp. 1209, 1214 (D.Kan.1995) ("Transfer should be the usual course rather than

dismissal)." (citing 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure Section 3827 at 274 (1986)). In the instant case, we find that the interests of justice is best served by a transfer rather than dismissal. Dismissal would result in needless expense and delay by requiring a new filing in another district. Moreover, the alleged delinquent contributions date back to 1993. Am.Compl. para. 16. Thus, dismissal might adversely affect the Trustees if the statute of limitations has run. *See* 29 U.S.C. Section 1451(f) (six and three year statute of limitations).

■ The Northern District of West Virginia would be a place of proper venue in the instant case, as the defendants' all reside in that district. Based on the current record, this district also appears to be the most convenient. The defendants submitted an affidavit of their general counsel, James Wall, wherein he states that all of the defendants' books and records are located in West Virginia. Defs' Mot.Ex. A. The Trustees, on the other hand, did not address the issue of convenience. Instead, they steadfastly maintained that venue was proper in the Western District of Pennsylvania.

Accordingly, the defendants' motion to dismiss for improper venue will be denied and the motion to transfer this case to the United States District Court for the Northern District of West Virginia will be granted.

An order consistent with this memorandum opinion will be entered.

### *ORDER*

**AND NOW** this 2 day of March, 2000, for the reasons stated in the accompanying

---

There are no reported cases dealing with this question. Looking at the plain, unambiguous meaning of "where the plan is administered", we find that plaintiffs' construction of this clause is correct.

The court went on to find that the plan at issue was administered in the Southern District of New York, observing that the employees responsible for the plan work in the New York office; the trustees only met in the New York office; all documents and records are kept in the New York office; eligibility determinations and appeals of such determinations were handled in the New York office; and the New York office is identified as the place of administration in the plan's filings with the Department of Labor. *Id.* at 723.

memorandum opinion, **IT IS HEREBY ORDERED** that:

1) The Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue, Pursuant to Fed. R.Civ.P. 12(b)(2) and (3) (Doc. No. 7) is **DENIED.**

2) The Defendant's Motion to Transfer Venue to the United States District for the Northern District of West Virginia (Doc. No. 7) is **GRANTED.** Accordingly, this action shall be transferred to the United States District Court for the Northern District of West Virginia and the clerk is directed to take all necessary steps to effectuate such transfer.